Spear & Co., Appellant, *v.* Pub. Serv. Com.

Argued April 14, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE and PARKER, JJ.

*William A. Magee,* and with him *Eugene B. Strassburger,* for appellant.

*E. Everett Mather, Jr.,* Assistant Counsel, and with him *John Fox Weiss,* Counsel, for appellee.

*Charles K. Robinson* of *Dickie, Robinson & McCamey,* and with him *H. D. Megahan* and *E. P. Griffiths,* for intervening appellee.

OPINION BY TREXLER, P. J., July 14, 1932:

The appellant, a corporation, a customer of the Duquesne Light Company presented its complaint to the Public Service Commission alleging that the rates charged for service during the period from February 1, 1928 to October 7, 1928 were unjust, unreasonable and discriminatory.

After the passage of the Public Service Company Law, customers of the light company were divided into three groups, "residential," "commercial or retail," and wholesale or industrial." Four schedules were available under the "wholesale or industrial" group, they were named "F," "F-W," "G" and "J." The appellant was served in five places under "F" and "F-W." On February 1, 1928 a new schedule "W" went into operation; it was designated as "optional." The appellant did not avail itself of the new rate, but continued under "F" in the particular place involved in this suit, but in October, 1929 selected rate "W"

instead of "F" and has since continued under that schedule. The burden of appellant's complaint is that it paid under "F," and should have paid under "W" and submitted figures to show results under both schedules, and that "W" was cheaper for it than "F." It asked the commission to rule that irrespective of the non-exercise of any choice on its part, the company should have scheduled it under "W" during the above period. It seeks to have this fact found in order to prepare the way for reparation. The company it argues should have exercised the choice between the two rates so as to give it the cheaper service.

Assuming that the optional feature of the rate was lawful, we do not think that any duty to select the rate rested with the company. We can do no better than to quote from the report of the commission in this regard:

"Complainant contends further that if optional rates are proper, it is the duty of the company to calculate which will be the cheapest for each consumer and to bill him upon that basis. In practice such a procedure would be well nigh impossible. A utility had the duty to make proper classifications of its service and to prescribe rates accordingly, but having done this and having made all proper information available to its patrons, its obligation has been met. No public service company is advised beforehand what amount of use a given consumer will make of its service or how efficiently it will be taken, as is illustrated by the conditions at complainant's store where rate "W" was first adopted and then discarded. Obviously a consumer who makes continuous and heavy use of a comparatively small amount of equipment would much prefer a rate based largely on a service or demand charge, with a low consumption charge, rather than a rate based mainly on the amount of energy used. The choice

between two such reasonable rates may properly be left to the consumer under ordinary circumstances.

While it is quite possible to make classifications of consumers unnecessarily complicated and to prescribe optional rates greater in number than necessary, the commission is not persuaded that respondent has done so in this instance, or has established a rate which involves a discrimination between classes of its consumers.''

The amount the customer was to use was at all times in its control, and it should have been the best judge as to what it needed.

Can an *optional* rate be lawfully made? We need not dwell upon the right of a public service company to classify its customers. Such right is given by paragraph b of Section 1 of Article 3 of the Public Service Company Law, 1913, July 26, P. L. 1374. A company ''has the right to divide its customers into groups according to the purpose for which electricity or steam is needed, these being subdivided into classes according to the quantity taken,'' Duquesne Light Co. v. Public Service Commission, 273 Pa. 287, 295, and after the effective date has passed without objection, such classifications are presumably reasonable and just. The appellant argues that the fixing of an optional rate is the ''inclusion of the same patron in two service classes.'' There is no doubt that if there be an option, it implies a choice between two or more schedules. This, however, does not indicate a preference for any consumer for each (as indeed the appellant did) may choose the rate most advantageous for it. The scheme opens an avenue by which service is available to all, so that each may have the service best suited for its needs. Although there is very little law on the subject, the practice of leaving to the consumer the selection of the rate most advantageous to it is not uncommon. Among the examples of this practice are the

frequent instances where the consumer of water may choose between a metered service and a flat rate based on the number of taps, or on the purpose for which the water is required. An analogy is drawn between the optional rates afforded by the railroads. There is a substantial difference between the regular fares and those charged for round trip and monthly commutation tickets. Appellant denies the applicability of this illustration to the present contention because the lessened cost to the particular classes of passengers is justified by the higher volume of business secured thereby. The fact, nevertheless, remains that one buying special trip tickets at reduced rates, may have the identical service as one who pays the regular fare. The same argument as to increased volume resulting from the fixing of lower rates may be applied to the present schedule ''W.'' The purpose of the company in fixing it presumably is to attract increased consumption of the commodity it is selling.

These optional rates have been approved in other states. In support of this assertion, counsel of intervening appellee refers to Dale & Son v. Edison Electric & Illuminating Co., Volume 6, N. Y. Public Service Commission Reports, 1st District, page 323; Silver's Lunch Stores, Inc. v. The United Electric Light & Power Co., City Court N. Y., A. F. Anderson et al. v. Commonwealth Edison Company, Public Utilities Commission's, Illinois, Vol. 4, page 165; Railton & Co. v. Commonwealth Edison Company, P. U. R. Illinois 1924 E. 161; Maison v. Commonwealth Edison Company, P. U. R. 1927 C. page 1, Illinois; Hoosier Stove Co. v. Indiana General Service Company, P. U. R. 1927, B. page 135, Indiana.

The allegation by the appellant that it had no notice of the optional rate does not affect the question, for the commission has found that the notice required by

law was given, and that is all the company was required to give.

The order of the Public Service Commission is approved; the appellant to pay the costs.